1

2

3

4

5

6

7 UNITED STATES DISTRICT COURT

8 DISTRICT OF OREGON

9 KENICHI "KEN" UCHIKURA, an individual

10 residing in the State of Washington,

Case No.: 3:15-cv-02007-AC

11 Plaintiff,

**FIRST AMENDED VERIFIED
COMPLAINT**

12 v.

**(To Compel Arbitration; Declaratory
Judgment and Injunctive Relief; Breach of
Contract; Unjust Enrichment)**

13 YOSHIDA BUSINESS SOLUTIONS, LLC, a

14 limited liability corporation of the state of Oregon;
YOSHIDA HOLDINGS, LLC, a limited liability

15 corporation of the state of Oregon; YFM, Inc., an
Oregon corporation; and JUNKI YOSHIDA, an

16 individual resident of Oregon.

17 Defendants.

18

19 Plaintiff Kenichi "Ken" UCHIKURA alleges as follows:

20 PARTIES

21 1. Mr. UCHIKURA is an individual resident of the State of Washington.

22 2. According to public records maintained by the Oregon Secretary of State,

23 Defendant YOSHIDA BUSINESS SOLUTIONS, LLC ("YBS") is a now-defunct Oregon

24 limited liability company whose principal place of business was in the state of Oregon. The

25 records state that YBS was dissolved pursuant to Articles of Merger filed December 29, 2011 to

26 be effective December 31, 2011. YBS was a party to the purported Exclusive Patent License

COMPLAINT – 1
Civil Action No.

**Silverman Law LLC**
**1001 SW 5th Ave., Ste. 1100**
**Portland OR 97204**

Agreement ("Agreement") that underlies this Complaint.  A true and correct copy of the Agreement is attached hereto as Exhibit A.

3.    According to public records maintained by the Oregon Secretary of State, Defendant YFM, Inc. ("YFM") is a now-defunct Oregon corporation whose principal place of business was in the state of Oregon.  The public records indicate that YFM was dissolved, and that its successor was YOSHIDA HOLDINGS, LLC ("YH"), pursuant to Articles of Merger filed December 29, 2011 to be effective December 31, 2011.

4.    YFM identified itself as the sole member of YBS, LLC when executing the Agreement.  Junki YOSHIDA signed the Agreement as Chief Executive Officer of YFM.

5.    According to public records maintained by the Oregon Secretary of State, Defendant YH is an Oregon limited liability company whose principal place of business is in the state of Oregon. The records state that YH is the sole surviving entity of the merger, pursuant to Articles of Merger filed December 29, 2011 to be effective December 31, 2011.  The records indicate that YBS and YFM were subsumed by the merger, along with three other entities.

6.    Upon information and belief, Defendant Mr. YOSHIDA is an Oregon resident and was and is the sole or majority owner of YBS, YFM and YH (collectively, the "Corporate Defendants") with the exclusive right and ability to control their acts and omissions.

7.    Mr. YOSHIDA is a proper party and personally liable for the obligations of the Corporate Defendants because the Corporate Defendants were held out by his agents to Mr. UCHIKURA as validly existing entities long after they had been dissolved (as specifically alleged below), and were misused by him as alter egos.

8.    Venue is proper under 28 U.S.C. § 1391(b)(1), in that all of the Defendants are residents of Oregon, and alternatively under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events and omissions giving rise to the claims occurred in this District.

9.    The grant of declaratory judgment would be authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a), as implemented by Rule 57 of the Federal Rules of Civil

COMPLAINT – 2
Civil Action No.

Procedure.  The grant of preliminary and permanent injunctive relief would be pursuant to Rule 65 of the FRCP.  An order compelling the parties to arbitrate would be pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

### NATURE OF THE ACTION

10.    This action concerns the purported Agreement between Mr. UCHIKURA and YBS.  Mr. UCHIKURA seeks a declaration that the Agreement includes a valid and enforceable agreement to arbitrate, and an order compelling arbitration that identifies which Defendants are bound by the agreement to arbitrate.  If there is no enforceable agreement to arbitrate, Mr. UCHIKURA seeks rescission of the Agreement on the grounds that it fails to document a meeting of the minds between the parties, because it is hopelessly unintelligible as to essential elements of the license terms.  If the Agreement is not subject to rescission, Mr. UCHIKURA seeks a declaration that the Agreement (which by its terms was personal to YBS and not transferable) was breached when YBS dissolved, that Defendants materially breached the Agreement by failing to market or promote the invention and by failing to pay all amounts due, and that the Agreement is terminated.  If the Agreement is not terminated, Mr. UCHIKURA seeks a declaration that the license granted under the Agreement has become non-exclusive, and reformation of the Agreement to reflect the original intent of the parties.

### JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), in that this action is between a resident of another state and residents of this district, and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

12.    All of the Corporate Defendants are current or now-defunct entities organized under the laws of the state of Oregon, with their respective principal places of business in this District.

13.    Mr. YOSHIDA, on information and belief, is a resident of the state of Oregon.

14.    Mr. UCHIKURA is a resident of the state of Washington.

COMPLAINT – 3
Civil Action No.

**Silverman Law LLC**
**1001 SW 5th Ave., Ste. 1100**
**Portland OR 97204**

**FACTUAL BASIS FOR ACTION**

**THE INVENTION AND PURPORTED AGREEMENT**

15.     Mr. UCHIKURA is the inventor of certain technology relating to authentication in secure online payment transactions (the "Invention"), for which he filed U.S. Patent Application No. 12/500,522 on July 9, 2009 (the "Patent Application").

16.     The Invention described in the Patent Application involves authentication of credit card holders in the course of purchases made with a specific credit card, to reduce instances of fraud.  Advantageously, it does so without revealing card holder information to credit card transaction clearing houses, lessening the risk that such information will be intercepted or misused.  Banks and payment processors are potential licensees.

17.     In 2009, Mr. UCHIKURA sought an investor to help with the legal and statutory fees associated with the Patent Application.  He entered into discussions with Mr. YOSHIDA for this purpose.  Mr. YOSHIDA asserted that he would use his supposed connections in the banking industry to promote and sell sublicenses to the Invention, in return for the exclusive right to promote and sell these sublicenses.

18.     On information and belief, Mr. YOSHIDA caused YBS to be created for the purpose of taking a license to the Patent Application.

19.     On information and belief, neither YBS nor Mr. YOSHIDA have ever conducted any other business after Mr. YOSHIDA signed the Agreement on behalf of YBS as CEO of YFM (identified at the execution line of the Agreement as the sole member of YBS), from the September 3, 2009 effective date of the Agreement to the present.

20.     Before signing the Agreement, Mr. UCHIKURA believed that a mutual understanding existed as to the contours of the Agreement as follows:

        a.     that Mr. YOSHIDA (or a company controlled by Mr. YOSHIDA) would pay the costs associated with prosecuting the Patent Application, in exchange for the exclusive right to license the Invention;

COMPLAINT – 4
Civil Action No.

**Silverman Law LLC**
**1001 SW 5th Ave., Ste. 1100**
**Portland OR 97204**

b.   that the right to license the Invention would increase in value if the Patent Application matured into an issued patent; and

c.   that Mr. UCHIKURA would be entitled to a royalty of fifty percent of the net revenues from licensing the Invention; and that Mr. YOSHIDA (or a company controlled by Mr. YOSHIDA) would be responsible, not only for the fees associated with the Patent Application but also, if a patent issued, for all expenses stemming from the marketing of the patent issued from the Patent Application or other expenses appurtenant to licensing and the generation of revenue.

21.    Before signing the Agreement, Mr. UCHIKURA and Mr. YOSHIDA reached an oral agreement pursuant to which Mr. YOSHIDA, or an entity controlled by Mr. YOSHIDA, would receive the exclusive rights to the sublicensing or other rights to the Invention and that, in turn, Mr. YOSHIDA, or the entity controlled by Mr. YOSHIDA, would pay all expenses for securing the necessary rights in the Invention and as were necessary to exploit those rights and, finally, that after Mr. YOSHIDA, or the entity controlled by Mr. YOSHIDA, was reimbursed for the expenses that were necessary to exploit those rights, Mr. UCHIKURA and Mr. YOSHIDA, or the entity controlled by Mr. YOSHIDA, would split all other revenue.

22.    On or about September 3, 2009, Mr. UCHIKURA signed the Agreement.  Mr. YOSHIDA signed for YBS as chief executive officer of YFM, designated in the Agreement as the sole member of YBS.

23.    After signing the purported Agreement, Mr. UCHIKURA proceeded through his counsel to prosecute the Patent Application.  The Patent Application was successful and resulting U.S. Patent No. 8,167,200 issued on May 1, 2012 (the "Patent").

24.    In accord with the intent of the parties, Mr. Yoshida directed the reimbursement of Mr. UCHIKURA for the fees and the costs attendant to the prosecution of the Patent Application from an account belonging to YBS and in all instances with checks including a legend

COMPLAINT – 5
Civil Action No.

identifying the owner of Account XXXXXX089 held by the Umpqua Bank as "Yoshida Business Systems, LLC" and in the following amounts (in the instance of the first check the legend was typed in and the check was of the counter variety having no preprinted check number):

|      | November 30, 2009  | $16,052.75  |
| 1153 | April 12, 2011     | $232.00     |
| 1154 | September 9, 2011  | $1,807.50   |
| 1156 | December 7, 2011   | $2,847.50   |
| 1157 | July 5, 2012       | $12,176.56  |
| 1158 | January 23, 2013   | $2,787.11   |

The payments totaled thirty five thousand nine hundred three dollars and forty two cents ($35,903.42).

25.    Upon information and belief, apart from this dispute none of the Defendants have ever spent any further amount on, or otherwise acted in furtherance of, licensing or generating revenue from the Patent.

### THE AGREEMENT WAS PERSONAL TO THE LICENSEE YBS

26.    Section 14.3 of the Agreement states:

No Assignments. The benefit of this Agreement shall be personal to the Licensee. The Licensee shall not assign this Agreement, nor part with any of the Licensee's rights or obligations under this Agreement. Licensor may assign this Agreement to any entity in which Licensor has majority ownership or control.

27.    YBS ceased to exist on or before December 31, 2011.

28.    On information and belief, when YBS ceased to exist, the Defendants attempted to assign the rights of YBS under the Agreement to a successor entity.

29.    The Defendants have never notified Mr. UCHIKURA that YBS ceased to exist.

30.    The Defendants have never notified Mr. UCHIKURA of any proposed assignment of, or transfer of rights to a new exclusive Licensee under the Agreement.

COMPLAINT – 6
Civil Action No.

**Silverman Law LLC
1001 SW 5th Ave., Ste. 1100
Portland OR 97204**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**UNINTELLIGIBILITY OF THE AGREEMENT'S LICENSE TERMS**

31.    Some provisions of the Agreement resemble a typical license to an invention, in that the licensor and licensee have the expected roles.  For example, the Recitals (expressly part of the Agreement) state that as Licensee, YBS will acquire "an exclusive license to further develop, commercialize, market and sell the Invention throughout the entire world."  Section 1.4 of the Agreement states that the term 'exclusive license' refers to rights that "exclude all others, including Licensor [Mr. UCHIKURA] and [his] affiliates except as otherwise expressly provided herein."  Section 3.3 states that the Licensee [YBS] will be "solely responsible" for "[c]ollecting all royalty payments, if any, due and payable under any sublicense granted under this Agreement."

32.    Section 5.2.2 of the Agreement states Licensee's obligation to calculate its Net Income quarterly and provide a report to Licensor.  The report is to indicate "the amount of Net Income produced by the Licensee during that quarter and the amount of any royalties accruing to the Licensor for that quarter."

33.    Sections 1.4, 3.3, and 5.2.2 of the Agreement all indicate that the party with the sole right to grant licenses and accrue revenues, and the sole obligation to make royalty payments thereon, was the Licensee, YBS.

34.    In other sections, the Agreement appears to confuse the roles of the Licensor and Licensee.  Section 1.3 defines the term "Net Income" and Section 5.1 states the royalty obligation.  "Net Income" is defined as "Licensee's gross revenue produced by Licensor's [*sic*] sale, sublicense, or use of the Invention, less all expenses and losses incurred by Licensor [*sic*] in marketing, developing, commercializing, and selling the products or services embodying the Invention." Likewise, the royalty obligation is described at Section 5.1 as "equal to fifty percent (50%) of Licensee's Net Income produced from Licensor's [*sic*] sale, sublicense, or use of the Invention."

COMPLAINT – 7
Civil Action No.

**Silverman Law LLC**
**1001 SW 5th Ave., Ste. 1100**
**Portland OR 97204**

35.    The instances of the terms "Licensor" and "Licensor's" highlighted in the preceding paragraph are the result of clerical or scrivener's errors.  The drafter inadvertently interchanged the terms "Licensee" and "Licensor" such that the terms no longer conform to their plain meaning, i.e. a Licensee is the recipient of a license in the rights the Licensor possesses.

36.    Section 5.3 of the Agreement gives Mr. UCHIKURA an option to convert the license to non-exclusive under certain conditions (though here, too, the roles appear to be reversed):

> "In the event Licensor's [sic] sale, sublicense, or use of the Invention under this Agreement does not produce positive Net Income sufficient to make a royalty payment to Licensee [sic] in accordance with Section 5.1 within the twelve (12) months following the date the of issuance of the patent under Patent Application Number 12500522, Licensor shall have the option to license the Invention and the Licensed Patent Rights to third-parties, thereby converting this Agreement to a 'Non- Exclusive Patent License Agreement.'"

37.    The instances of the terms "Licensor's" and "Licensee" highlighted in the preceding paragraph are the result of clerical errors.  Again, the two terms are clearly interchanged in a manner that is consistent neither with the intent of the parties nor with the facts in place at the time of execution.

38.    If the definitions of Net Income in Section 1.3 and of the royalty obligation in Sections 5.1 and 5.3 of the Agreement correctly captured the intent of the parties, then the parties intended the royalty payable to Mr. UCHIKURA to be zero in every quarter, because Licensor's sale, sublicense, or use of the Invention would never result in revenue for Licensee, unless Licensor itself paid a licensing fee to Licensee for such sale, sublicense, or use of the Invention.

39.    The parties did not intend that the royalty payable to Mr. UCHIKURA under the Agreement should be zero in every quarter.

40.    If the Agreement defines a royalty obligation, to be paid by Licensee YBS to Licensor Mr. UCHIKURA, and that royalty obligation is based solely upon revenues accruing to

**Silverman Law LLC**
**1001 SW 5th Ave., Ste. 1100**
**Portland OR 97204**

YBS from future payments to YBS by Mr. UCHIKURA, then it defines an obligation that is circular, illusory and would never arise in fact.

41.     The parties did not intend that Mr. UCHIKURA, as Licensor, should pay licensing fees to YBS, as Licensee, for Mr. UCHIKURA'S own sale, sublicense, or use of his invention.

42.      If the Agreement is valid and binding, then under the Agreement Mr. UCHIKURA had no rights to sell, sublicense or use the Invention as such rights had been granted exclusively to YBS for the period of at least 1 (one) year (the period of exclusivity).

43.     The parties did not intend that the royalty on sublicenses, a royalty payable by YBS as Licensee to Mr. UCHIKURA as Licensor, should be based in turn on payments by Mr. UCHIKURA to YBS.  YBS had no rights prior to execution, for which a royalty would be appropriate.

### NON-PERFORMANCE BY THE DEFENDANTS

44.     Section 5.4 of the Agreement requires the Licensee to "pay all expenses, including but not limited to attorney fees necessary to establish and develop the Licensed Patent Rights and the Invention."

45.     The Agreement anticipates either YBS, or Mr. YOSHIDA on behalf of YBS, would contact banking corporations and would pursue sublicenses for the Invention wherein the banking corporations would pay royalty payments to YBS which would, in turn, after subtracting costs, split the difference between YBS and Mr. UCHIKURA.

46.     Mr. UCHIKURA has made repeated demands for an accounting and report of the efforts to establish sublicensees pursuant to Section 3.3 of the Agreement.

47.     Neither YBS nor Mr. YOSHIDA, nor, in fact any defendant, has ever reported any efforts made to establish sublicensees, nor have either made any royalty payment to Mr. UCHIKURA.

COMPLAINT – 9
Civil Action No.

**Silverman Law LLC**
**1001 SW 5th Ave., Ste. 1100**
**Portland OR 97204**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### THE AGREEMENT TO ARBITRATE

48.    Section 13 of the Agreement states that all controversies related to the license are to be resolved by arbitration, before a single arbitrator, although a party may proceed instead in court "where injunctive relief is appropriate."  The party seeking arbitration may choose either Portland or Seattle for the venue.  The arbitrator is empowered to award fees and costs to a prevailing party.

49.    Section 13 of the Agreement documents an enforceable agreement to arbitrate disputes, even if the Agreement fails to describe a binding or enforceable license.

50.    Mr. UCHIKURA has not initiated arbitration because he does not know against whom he is supposed to arbitrate.  YBS, the entity that agreed to arbitrate disputes with Mr. UCHIKURA, no longer exists; YFM, the sole member of YBS has likewise vanished.  Mr. UCHIKURA seeks an order determining which Defendants are required to arbitrate.

### DEFENDANTS HELD OUT YBS AS EXISTING LONG AFTER ITS DISSOLUTION

51.    Well after the dissolution of YBS in December, 2011, Mr. YOSHIDA continued to have all payments arising under the Agreement made by checks drawn upon Account XXXXXX089 held by the Umpqua Bank and bearing the legend of "Yoshida Business Systems, LLC".

52.    On or around March 27, 2014, pursuant to Section 14.1 of the Agreement, counsel for Mr. UCHIKURA contacted the attorney designated as counsel for formal notice (the "Letter of March 27, 2014").  A true and correct copy of the Letter of March 27, 2014 is attached hereto as Exhibit B.

53.    The Letter of March 27, 2014 cited Section 5.3 of the Agreement, claimed that YBS had not paid any royalties or expenses under the Agreement, and notified counsel for YBS that Mr. UCHIKURA was exercising the option to convert the license from exclusive to non-exclusive.

**Silverman Law LLC**
**1001 SW 5th Ave., Ste. 1100**
**Portland OR 97204**

54.     The Letter of March 27, 2014 further claimed that payments to reimburse Mr. UCHIKURA for his expenses were past due under the Agreement.

55.     The Letter of March 27, 2014 mentioned that a deadline was approaching to appeal a rejection of an application for securing patent rights to the Invention in Japan, and that the Japanese application would fail unless YBS committed to fund the appeal prior to the deadline. The Letter of March 27, 2014 requested resolution of the matter prior to April 14, 2014.

56.     The deadline to appeal the rejection of the Japanese application passed without any response from counsel designated for providing formal notice to the Defendants.

57.     On or around April 25, 2014, Theodore M. Brindle, an attorney, wrote to counsel for Mr. UCHIKURA in response to the Letter of March 27, 2014 (the "Letter of April 25, 2014"). A true and correct copy of the Letter of April 25, 2014 is attached hereto as Exhibit C.

58.     The Letter of April 25, 2014 listed "Yoshida Business Solutions, LLC" as Mr. Brindle's client in the subject line.

59.     In the Letter of April 25, 2014, Mr. Brindle stated that he represented "Yoshida Business Solutions (YBS) in connection to your letter of March 27, 2014."

60.     In the Letter of April 25, 2014, Mr. Brindle failed to mention that YBS had been dissolved for more than two years.

61.     In the Letter of April 25, 2014, Mr. Brindle disputed the factual allegations relating to the non-payment of expenses and fees as follows:

> Our records reflect that substantial monies have been expended by our client in connection with reimbursing Mr. UCHIKURA for various expenses over the length of this contract. Accordingly, we do not see the expense provision as being any basis for rescission of this agreement.

62.     In the Letter of April 25, 2014 Mr. Brindle requested an accounting, not only of the claimed expenses but also of "all efforts directed to and from your client or his

representatives regarding commercialization, marketing, distribution, use or sublease of the patented product."

63.     On or around March 27, 2015, counsel for Mr. UCHIKURA responded to Mr. Brindle (the "Letter of March 27, 2015").  A true and correct copy of the Letter of March 27, 2015 is attached hereto as Exhibit D.

64.     In the Letter of March 27, 2015, counsel for Mr. UCHIKURA referred to Mr. Brindle's claim that YBS had expended "substantial monies" in fulfillment of the Agreement, and requested an accounting of those expenditures.

65.     The Letter of March 27, 2015 notified Mr. Brindle that Mr. UCHIKURA considered the Agreement breached and that the Agreement would terminate unless the breach was cured within 60 days.

66.     Section 10 of the Agreement provides for notice of claimed breaches and a sixty-day cure period.

67.     On or around May 6, 2015, Thomas A. Larkin, an attorney, wrote to counsel for Mr. UCHIKURA in response to the Letter of March 27, 2015 (the "Letter of May 6, 2015"). A true and correct copy of the Letter of May 6, 2015 is attached hereto as Exhibit E.

68.     In the Letter of May 6, 2015, Mr. Larkin stated that his firm "represents Yoshida Business Solutions (YBS) in connection with your March 27, 2015 letter to Ted Brindle."

69.     In the Letter of May 6, 2015, Mr. Larkin failed to mention that YBS had been dissolved for more than three years.

70.     The Letter of May 6, 2015 refers to the request for an accounting by counsel for Mr. UCHIKURA in the Letter of March 27, 2015; the Letter of May 6, 2015 states that "under the license agreement, my client cannot provide you with any such records, unless and until you produce records of monies spent by your client in marketing, selling and commercializing the Invention."

COMPLAINT – 12
Civil Action No.

**Silverman Law LLC**
**1001 SW 5th Ave., Ste. 1100**
**Portland OR 97204**

71.     The Letter of May 6, 2015 argues that Sections 1.3, 5.2.2 and 5.4 of the Agreement all support the claim that Mr. UCHIKURA had the right and obligation to use, market, commercialize, and sell the Invention.

72.     The Letter of May 6, 2015 does not explain how Mr. UCHIKURA could have had the right or obligation to use, market, commercialize, or sell the Invention in light of Section 1.4 of the Agreement (defining the license as exclusive, even as to the Licensor).

73.     On or around July 1, 2015, Mr. Larkin again wrote to counsel for Mr. UCHIKURA (the "Letter of July 1, 2015"). A true and correct copy of the Letter of July 1, 2015 is attached hereto as Exhibit F.

74.     In the Letter of July 1, 2015, Mr. Larkin mentioned a possible settlement in which Mr. UCHIKURA would buy out "YBS' interest in the License Agreement".

75.     In the Letter of July 1, 2015, Mr. Larkin again failed to mention that YBS had been dissolved for more than three years.

76.     Included with Mr. Larkin's Letter of July 1, 2015 was a draft complaint, a true and correct copy of which is attached hereto as Exhibit G (the "Draft Complaint").

77.     The Draft Complaint lists YBS as the Plaintiff in the caption, and in the first numbered paragraph states that "Yoshida [Business Solutions] is an Oregon limited liability company."

78.     The claim about the existence of YBS in the first numbered paragraph of the Draft Complaint was and is false, because YBS was dissolved on or about December 31, 2011, nearly four years earlier.

79.     In his Letter of July 1, 2015 Mr. Larkin states that he also represents Defendant Junki YOSHIDA.

80.     Defendant Junki YOSHIDA, through his agents Mr. Brindle and Mr. Larkin, held out and misrepresented YBS as a valid and existing entity for years after it had been dissolved.

COMPLAINT – 13
Civil Action No.

**Silverman Law LLC**
**1001 SW 5th Ave., Ste. 1100**
**Portland OR 97204**

81.    On information and belief, Mr. YOSHIDA used and controlled YBS as his alter ego.

82.     On information and belief, YBS disregarded the corporate formalities such as membership meetings, recorded votes, and issuance of certificates of membership interests.

### PLAINTIFF'S DAMAGES EXCEED THE STATUTORY THRESHOLD

83.    When the Patent was issued, there was very significant potential for licensing revenue because the claims read on practices that had then become common at the time in the electronic payments industry.

84.    No licensing revenue was ever generated from the Patent because the Defendants failed and refuse to commercialize the Invention or conduct a licensing campaign.

85.    Mr. UCHIKURA never attempted to commercialize the Invention or conduct a licensing campaign for the Patent because he believed he was prohibited from doing so by the exclusivity terms of the Agreement.

86.    Mr. UCHIKURA has been damaged in an amount to be proven at trial, but not less than one hundred thousand dollars ($100,000) by the Defendants' failure and refusal to make any effort to generate licensing revenues from the Patent.

### FIRST CLAIM FOR RELIEF (ARBITRATION – INJUNCTION – YBS)

87.    Mr. UCHIKURA incorporates the allegations set forth above.

88.    A justiciable controversy exists between Mr. UCHIKURA and YBS.

89.    Section 13 of the Agreement is a written provision, in a contract evidencing a transaction involving commerce, to settle by arbitration subsequent controversies between Mr. UCHIKURA and YBS arising from the contract.

90.    The parties to the Agreement intended to be bound by Section 13 of the Agreement.

COMPLAINT – 14
Civil Action No.

**Silverman Law LLC**
**1001 SW 5th Ave., Ste. 1100**
**Portland OR 97204**

91.    Even if the Agreement as a whole is unenforceable, Section 13 is enforceable pursuant to 9 U.S.C. § 2 or O.R.S. 36.620 (1).

## SECOND CLAIM FOR RELIEF (ARBITRATION – INJUNCTION – YFM AND YH)

92.    Mr. UCHIKURA incorporates the allegations set forth above.

93.    YFM was a party to the Agreement, as the sole member of YBS and as indicated by the signatures, and is bound to arbitrate this dispute by Section 13 of the Agreement.

94.    Even if YFM was not a party to the Agreement, it is a necessary party to arbitration of this matter.

95.    YH, as the purported successor in interest to the rights and obligations of YFM and YBS under the Agreement, is a necessary party to arbitration of this matter.

## THIRD CLAIM FOR RELIEF (ARBITRATION – INJUNCTION – JUNKI YOSHIDA)

96.    Mr. UCHIKURA incorporates the allegations set forth above.

97.    The ability of YBS to limit Mr. YOSHIDA's personal liability for its acts and omissions disappeared when Mr. YOSHIDA's agents, Mr. Brindle and Mr. Larkin, held YBS out as a valid, existing company for years after Mr. YOSHIDA had merged YBS out of existence.

98.    On information and belief, Mr. YOSHIDA treated YBS as an alter ego, with disregard for its separate existence and corporate form.

99.    Because Mr. YOSHIDA is personally liable for the acts and omissions of YBS, he is a necessary party to arbitration of this matter.

## FOURTH CLAIM FOR RELIEF (DECLARATORY JUDGMENT – RESCISSION – ALL DEFENDANTS)

100.    Mr. UCHIKURA incorporates the allegations set forth above.

COMPLAINT – 15
Civil Action No.

**Silverman Law LLC**
**1001 SW 5th Ave., Ste. 1100**
**Portland OR 97204**

101.    Because the terms of the license grant and royalty obligation are hopelessly contradictory and unintelligible in the Agreement as written, the Agreement on its face fails to memorialize a mutual understanding between the parties as to material aspects of the Agreement.

102.    Because the terms of the license grant and royalty obligation in the Agreement do not reflect a meeting of the minds of the parties to the Agreement, the Agreement was not properly formed and is subject to rescission.

## FIFTH CLAIM FOR RELIEF (REFORMATION)

103.    Mr. UCHIKURA incorporates the allegations set forth above.

104.    In drafting the Agreement to reflect their mutual understanding of the arrangement, as set forth above, the parties incorrectly identified the "Licensor" as the "Licensee" (or *vice-versa*) in the instances cited above at Sections 1.3, 5.1, and 5.3 of the Agreement.

105.    That these instances of confusion of the roles of the "Licensor" and "Licensee" in the Agreement amount to clerical or scrivener's errors, and may be readily corrected by the Court in accord with the intent of the parties at the time of execution.

106.    Equity requires that the Contract be reformed to remedy the scrivener's errors.

## SIXTH CLAIM FOR RELIEF (QUASI CONTRACT OR UNJUST ENRICHMENT)

107.    Mr. UCHIKURA incorporates the allegations set forth above.

108.    There was an oral agreement between Mr. UCHIKURA and Mr. YOSHIDA as alleged in Paragraph 21 above.

109.    As a result of the oral agreement, Mr. UCHIKURA conferred a benefit to Mr. YOSHIDA, or the entity controlled by Mr. YOSHIDA, by remaining out of the marketplace to promote his Invention and solicit licensing fees.

COMPLAINT – 16
Civil Action No.

**Silverman Law LLC**
**1001 SW 5th Ave., Ste. 1100**
**Portland OR 97204**

110.    Mr. YOSHIDA was aware of the fact that Mr. UCHIKURA had remained out of the marketplace in favor of Mr. YOSHIDA and Mr. YOSHIDA's efforts to realize revenue from marketing and selling rights in Mr. UCHIKURA's Invention.

111.    Equity dictates that it would be unjust to allow Mr. YOSHIDA to keep Mr. UCHIKURA's invention out of the marketplace without requiring Mr. YOSHIDA to pay Mr. UCHIKURA for that forbearance.

### PRAYER FOR RELIEF

WHEREFORE, UCHIKURA prays for judgment against each of the Defendants and for the following relief:

A.    A declaration of this Court in the form of an order designating one or more of the Defendants as a proper party or parties to arbitration, and directing such Defendant(s) and Mr. UCHIKURA to arbitrate pursuant to Section 13 of the Agreement; or, alternatively

B.    An order of this Court declaring that the Agreement is void because a contract was not formed as to the material elements of the license, that none of the Defendants has any rights related to the Patent, and judgment for Mr. UCHIKURA in an amount sufficient to restore him to his pre-Agreement position, to be proven at trial, including without limitation to compensate Mr. UCHIKURA for his forbearance in not marketing, promoting or selling rights in the Invention or the Patent; or, alternatively

C.    An order of this Court declaring the Agreement is enforceable, that Section 14.3 of the Agreement was breached on or about December 31, 2011 when YBS was dissolved in the merger, that the breach was material, and that the Agreement has terminated as the result of the breach, and awarding Mr. UCHIKURA the damages caused by the breach, in an amount to be proven at trial, including without limitation to compensate Mr. UCHIKURA for his forbearance in not marketing, promoting or selling rights in the Invention or the Patent;  or, alternatively

COMPLAINT – 17
Civil Action No.

**Silverman Law LLC**
**1001 SW 5th Ave., Ste. 1100**
**Portland OR 97204**

1    D.    An order of this Court declaring the Agreement enforceable but subject to

2  reformation, identifying which Defendant(s) is the Licensee, reversing the mis-designations of

3  "Licensor" and "Licensee" in Sections 1.3, 5.1 and 5.3 to comport with the intent of the parties

4  to the Agreement, and judgment that Defendants breached the Agreement, that the breach was

5  material, that the Agreement has terminated as the result of the breach, and awarding Mr.

6  UCHIKURA the damages caused by the breach, in an amount to be proven at trial, including

7  without limitation to compensate Mr. UCHIKURA for his forbearance in not marketing, promoting

8  or selling rights in the Invention or the Patent; and Mr. UCHIKURA also prays for the following:

9    E.    An Order declaring that none of the Defendants has any rights related to the

10  Patent;

11    F.    For costs of suit herein;

12    G.    For reasonable attorney's fees; and

13    H.    For such other further relief as this Court deems proper.

14

15  RESPECTFULLY SUBMITTED this **26**$^{\text{th}}$ day of October, 2015.

16

17

18  David L. Silverman, OSB # 014143
    SILVERMAN LAW LLC

19  1001 SW 5TH AVE., STE. 1100
    PORTLAND OR 97204

20  (503) 219-3750
    info@dlslawllc.com

21

22  Mark L. Lorbiecki, WSBA # 16796
    LOWE  GRAHAM JONES$^{\text{PLLC}}$

23  701 Fifth Avenue, Suite 4800
    Seattle, WA 98104

24  T: 206.381.3300
    F: 206.381.3301

25  Lorbiecki@LoweGrahamJones.com

26

·  COMPLAINT – 18
   Civil Action No.

1

2

<u>**VERIFICATION**</u>

3

    I, the undersigned Plaintiff, Kenichi "Ken" Uchikura, have read this Verified Complaint

4

and the same is, by my own knowledge and upon information furnished to me, true. I declare

5

under penalty of perjury under the laws of the United States of America that the foregoing is true

6

and correct.

7

8

Dated:

9

10

11

By:  Kenichi "Ken" Uchikura

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT – 19

Civil Action No.