UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


KENICHI "KEN" UCHIKURA, an individual
residing in the State of Washington,

                                Plaintiff,

       v.

YOSHIDA BUSINESS SOLUTIONS, LLC, a
limited liability corporation of the state of Oregon;
YOSHIDA HOLDINGS, LLC, a limited liability
corporation of the state of Oregon; YFM, INC., an
Oregon corporation; and JUNKI YOSHIDA, an
individual resident of Oregon,

                                Defendants.

_____

Case No. 3:15-cv-2007-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

       Plaintiff Kenichi Uchikura ("Uchikura") filed this action seeking to resolve issues relating

to an exclusive licensing agreement between Uchikura and defendant Yoshida Business Solutions,

LLC, ("Yoshida Business"). In light of the dissolution of Yoshida Business, Uchikura named YFM,

Inc., ("YFM"); Yunki Yoshida ("Yoshida"); Yoshida Holdings, LLC ("Yoshida Holdings"), as additional defendants because of their relationships to Yoshida Business (collectively "Defendants"). Yoshida Business immediately initiated arbitration under the terms of licensing agreement. Uchikura moves to stay the arbitration pending reformation of the license agreement and resolution of issues related to Yoshida, Yoshida Holdings, and YFM by the court. Defendants seek dismissal of this action, arguing the initiation of arbitration moots the claims alleged in the First Amended Verified Complaint filed October 26, 2015 (the "Complaint").

The court finds the broad arbitration provision in the license agreement encompasses all of the claims asserted in the Complaint with the possible exception of Defendants' respective liabilities, which the court can resolve, if necessary, after an arbitration award is issued. Accordingly, Uchikura's motion to stay this action and Defendants' motion to dismiss the Complaint are both denied.[1]

*Background*

Uchikura invented an "Authorization Verification System" which provides an added layer of protection to a cardholder or card issuer during a credit card transaction (the "Invention") and filed an application for a U.S. patent with respect to the Invention in July 2009. (First Am. Verified Compl., ECF No. 3 ("Compl.") Ex. A.) Uchikura needed assistance with the costs associated with the patent application and Yoshida offered to finance such costs in exchange for the exclusive right to promote and sell sublicenses for the Invention. (Compl. ¶17.) The parties reached an agreement that:

---

[1]The parties have consented to have a United States Magistrate Judge conduct any and all proceedings in this case, including entry of orders on dispositive motions, trial, and entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73(b).

Mr. YOSHIDA, or an entity controlled by Mr. YOSHIDA, would receive the exclusive rights to the sublicensing or other rights to the Invention and that, in turn, Mr. YOSHIDA, or the entity controlled by Mr. YOSHIDA, would pay all expenses for securing the necessary rights in the Invention and as were necessary to exploit those rights and, finally, that after Mr. YOSHIDA, or the entity controlled by Mr. YOSHIDA, was reimbursed for the expenses that were necessary to exploit those rights, Mr. UCHIKURA and Mr. YOSHIDA, or the entity controlled by Mr. YOSHIDA, would split all other revenue.

(Compl. ¶ 21.)

On August 13, 2009, Articles of Incorporation creating Yoshida Business were filed by Yoshida with the State of Oregon, in which YFM was identified as the sole member. (Compl. ¶ 18; Lorbiecki Decl. dated November 12, 2015, ECF No. 12 ("Loribiecki Nov. Decl."), Ex. C.) Uchikura and Yoshida Business entered into a Exclusive Patent License Agreement effective September 3, 2009 (the "Agreement"), which gave Yoshida Business "an irrevocable, perpetual Exclusive License to develop, modify, manufacture, commercialize, market, distribute, use, sublicense, and sell the Invention" throughout the world. (Compl. Ex. A, at ¶ 2.) In return, Yoshida Business agreed to pay Uchikura fifty percent of the net income[2] produced by the Invention on a quarterly basis based on quarterly reports provided by Yoshida Business to Uchikura. (Compl. Ex. A, at ¶ 5.) Yoshida Business is obligated to pay all expenses necessary to establish and develop the Invention, including travel expenses incurred by Uchikura, when such travel is requested by Yoshida Business to perform obligations under the Agreement, and maintain accurate books and records reflecting annual net income and royalties paid to Uchikura. (Compl. Ex. A, at ¶ 5.)

---

[2]The Agreement defines "Net Income" as "Licensee's gross revenue produced by Licensor's sale, sublicense, or use of the Invention less all expenses and losses incurred by the Licensor in marketing, developing, commercializing, and selling the product or services embodying the Invention." (Compl. Ex. A. ¶ 1.3.) Uchikura alleges the definition confuses the terms licensee and licensor and is the result of a clerical or scrivener's error. (Compl. ¶ 34.)

The license granted under the Agreement continued until the patent rights to the Invention had expired, with the exception that if either party was in breach of the Agreement, the Agreement would terminate sixty days after written notice of such breach to the breaching party, provided the breaching party failed to cure, or make reasonable progress toward curing, the default, and the other party was not then in default (Compl. Ex. A, at ¶ 10.) The continuing exclusivity of the license was contingent upon the production of sufficient net income in the year following the issuance of the patent to allow Yoshida Business to make a royalty payment to Uchikura during this same time period. (Compl. Ex. A, at ¶ 5.3) Additionally, the Agreement prohibited Yoshida Business from assigning the Agreement or part with any of its rights or obligations under the Agreement. (Compl. Ex. A, at ¶ 14.3.)

The parties agreed to arbitrate disputes related to the license in Paragraph 13 of the Agreement (the "Arbitration Clause"), which provides:

> All controversies or claims between Licensor and the Licensee relating to this license shall be settled by arbitration. Arbitration shall be conducted before a single arbitrator in either Seattle, Washington, or Portland, Oregon, as determined by the party filing the claim, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. All arbitration costs and fees, including reasonable attorney fees, incurred during or necessitated by the arbitration proceedings, shall be paid by the parties as determined by the arbitrators. Nothing herein, however, shall prevent either party from resort to a court of competent jurisdiction in those instances where injunctive relief may be appropriate.

(Compl. Ex. A, at ¶ 13.) In the event a court of competent jurisdiction determined that any portion of the Agreement was unenforceable, the parties agreed the remainder of the Agreement would be fully enforceable. (Compl. Ex. A, at ¶ 14.9.) The Agreement was signed by Yoshida as Chief Executive Officer of YFM, identified as an Oregon corporation and sole member of Yoshida Business. (Compl. Ex. A, at 7.)

YFM filed articles of dissolution of Yoshida Business effective December 31, 2011. (Loribiecki Nov. Decl. Ex. C"). The same day, YFM merged with other entities controlled by Yoshida into the surviving entity, Yoshida Holdings, pursuant to an Agreement and Plan of Merger (the "Plan of Merger"). (Loribiecki Nov. Decl. Exs. F, G.) Yoshida Business and Yoshida Holdings acknowledged they "are part of an affiliated group with the same beneficial owner." (Loribiecki Nov. Decl. Ex. G, at 3.) The Plan of Merger provided that the Merged Entities, including Yoshida Business "shall cease to exist as a business entity, and except as may otherwise be provided in the [Oregon Business Corporation Act and the Oregon Limited Liability Company Act], their property shall become the property of the Surviving Entity, and their rights, obligations, claims, and interests shall become those of the Survivor Entity." (Loribiecki Nov. Decl. Ex. G, at 2-3.) More specifically, the Plan of Merger stated:

> Upon the Effective Date, the Surviving Entity shall succeed to and possess, without further act or deed, all of the rights, privileges, powers, and franchises, both public and private, and all the property, real, personal, and mixed, of the Merged Entities; all debts due to the Merged Entities on whatever account shall be vested in the Surviving Entities; all claims, demands, property, rights privileges, powers, and franchises and every other interest of the Merged Entities shall be the property of the Surviving Entity; the title of any real estate vested in the Merged Entities shall be vested in the Surviving Entity; all rights of creditors and all liens upon any property of the Merged Entities shall be preserved unimpaired, only limited in lien to the property affected by such lien at the Effective Date; all debts, liabilities, obligations and duties of the Merged Entities shall attach to the Surviving Entity and may be enforced against it as if such debts, liabilities, obligations and duties had been incurred by the Surviving Entity.

(Loribiecki Nov. Decl. Ex. G, at 3-4.)

Uchikura successfully prosecuted the patent application and U.S. Patent No. 8,167,200 recognizing the Invention was issued on May 1, 2012 (the "Patent"). (Compl. ¶23.) Between November 30, 2009, and January 23, 2013, Yoshida reimbursed Uchikura nearly $36,000 for fees

and costs associated with the prosecution of the Patent through checks drawn on a Yoshida Business account, despite the dissolution of Yoshida Business in December 2011. (Compl. ¶¶ 24, 51.) Yoshida Business failed to pursue sublicenses for the Invention which would have generated licensing fees and possible royalty fees, or to provide written quarterly written reports to Uchikura despite repeated demands. (Compl. ¶¶ 45-47.)

In a letter dated March 27, 2014, addressed to the attorney identified as a party to receive notice under the Agreement, Mark Lorbiecki, Uchikura's legal counsel, communicated Uchikura's desire to formally revoke the Agreement based on Yoshida Business's failure to pay Uchikura's attorney fees and travel expenses, which he characterized as considerable.[3] (Compl. Ex. B, at 1.) Lorbiecki acknowledged the Agreement provided for the conversion of the exclusive license to a non-exclusive license and, in fact, provided notice of such conversion, but thought Yoshida Business would prefer to avoid payment of the fees and expenses then owed by revoking the Agreement in full. (Compl. Ex. B, at 1-2.) Ted Brindle responded to Lorbiecki's letter on behalf of Yoshida Business by letter dated April 25, 2014. (Compl. Ex. C, at 1.) Brindle noted the Agreement required Yoshida Business to reimburse Uchikura for travel expenses only when such travel is requested by Yoshida Business, and that Yoshida Business had not agreed to pursue patent rights in Japan. (Compl. Ex. C, at 1.) He further noted that "substantial monies have been expended by our client in connection with reimbursing Mr Uchikura for various expenses over the length of this contract." (Compl. Ex. C, at 1.) Brindle requested copies of documents relating to Uchikura's actions with regard to the Invention and Patent, as well as invoices of unpaid expenses, and expressed concern

---

[3]Uchikura had pursued a patent application with the Japanese Patent Office. (Compl. Ex. B, at 1.)

that Uchikura's legal counsel was billing an entity named PSP Inc. for services rendered to Uchikura, and that PSP Inc. forwarded such billings to Yoshida Business for payment. (Compl. Ex. C, at 1-2.) Brindle specifically rejected Uchikura's attempt to unilaterally revoke the Agreement. (Compl. Ex. C, at 2.)

On March 27, 2015, Lorbiecki advised Brindle that Uchikura required "an accounting of the 'substantial monies' that have been spent and a report as to the efforts that have been made pursuant to the license agreement to promote the invention" from Yoshida Business and that failure to provide such was a breach of the Agreement. (Compl. Ex. D.) In the event Yoshida Business failed to provide the accounting report and cure the breach within sixty days, the Licence would terminate under the terms of the Agreement. (Compl. Ex. D.)

Six weeks later, Thomas A. Larkin responded on behalf of Yoshida Business, explaining Uchikura's failure to provide the records of monies spent to commercialize the Invention previously requested and required under the Agreement prevented Yoshida Business from providing the requested accounting. (Compl. Ex. E, at 1.) Larkin again requested all invoices of Uchikura's unpaid expenses, as well as documentation and correspondence, relating to Uchikura's commercialization, marketing, distribution or sale of the Invention. (Compl. Ex. E, at 2.) He expressed Yoshida Business's desire to work with Uchikura to realize the full potential of the Patent but cautioned that if Uchikura failed to provide the requested documentation, Yoshida would pursue all available legal remedies. (Compl. Ex. E, at 2.)

Larkin followed up with a letter to Lorbiecki dated July 1, 2015, noting Uchikura's failure to provide the requested documentation and enclosing a copy of a draft complaint for breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory relief, and an

action for an accounting, which Yoshida Business intended to file in state court if the outstanding issues could not be resolved.  (Compl. Ex. F, at 1; Ex. G.)  Larkin again expressed Yoshida Business's commitment to making the Agreement a "profitable endeavor for all," but indicated Yoshida Business was open to selling its interest in the Agreement to Uchikura in conjunction with Pacific Publishing Software, Inc., purchasing Yoshida's stock ownership in that company.  (Compl. Ex. F, at 1-2.)  When it became clear the parties would not resolve their issues, Uchikura filed this lawsuit on October 23, 2015.

Uchikura describes the "Nature of the Action" in Paragraph 10 of the Complaint as:

> This Action concerns the purported Agreement between Mr. UCHIKURA and YBS.  Mr. UCHIKURA seeks a declaration that the Agreement includes a valid and enforceable agreement to arbitrate, and an order compelling arbitration that identifies which Defendants are bound by the agreement to arbitrate.  If there is no enforceable agreement to arbitrate, Mr. UCHIKURA seeks rescission of the Agreement on the grounds that it fails to document a meeting of the minds between the parties, because it is hopelessly unintelligible as to essential elements of the license terms.  If the Agreement is not subject to rescission, Mr. UCHIKURA seeks a declaration that the Agreement (which by its terms was personal to YBS and not transferrable) was breached when YBS dissolved, that Defendants materially breached the Agreement by failing to market or promote the invention and by failing to pay all amounts when due, and that the Agreement is terminated.  If the Agreement is not terminated, Mr. UCHIKURA seeks a declaration that the license granted under the Agreement has become non-exclusive, and reformation of the Agreement to reflect the original intent of the parties.

(Compl. ¶ 10.)

On November 6, 2015, after being served with the Complaint, Yoshida Business initiated an arbitration with the Arbitration Service of Oregon ("Arbitration Service") asserting claims for breach of the Agreement, breach of the implied covenant of good faith and fair dealing, declaratory relief, and an accounting based on Uchikura's conduct under the Agreement (the "Arbitration"). (Lorbiecki Nov. Decl. Ex. A.)  Yoshida Business alleged Uchikura breached the Agreement by failing to

provide an accounting of his activities and expenditures with regard to the Invention, improperly attempting to terminate the Agreement, and filing this action in violation of the Arbitration Clause.

Uchikura filed a motion for a temporary restraining order and preliminary injunction on November 12, 2015, ("TRO Motion") seeking an order "enjoining Defendants from pursuing arbitration pending final resolution of this matter on the merits" and expedited consideration. (Mot. for TRO and Prelim. Inj., ECF No. 11 ("TRO Mot.") at 1.)  The parties subsequently agreed to stay briefing in the Arbitration to provide additional time to fully brief the issues before the court.  In light of the parties' agreement and resulting alleviation of time pressures, the TRO Motion has evolved into a motion to stay the Arbitration pursuant to the Federal Arbitration Act, rather than for a temporary restraining order or preliminary injunction.  Specifically, in his reply brief, Uchikura asserts the court should:

> stay the arbitration, pursuant to 9 U.S.C. § 3, for four reasons: (1) Uchikura agreed to arbitrate disputes with the now-defunct Yoshida Business Solutions, LLC ("YBS"), but did not agree to arbitrate with its purported successors-in-interest or its shadow owner;  (2) no defendant other than YBS has agreed to arbitrate; (3) an arbitrator would have no authority to make an award against any defendant other than YBS; and (4) arbitration would be futile unless all defendants were before the arbitrator, and a futile arbitration is likely to cause irreparable harm.

(Pl.'s Reply to Mot. For TRO and Prelim. Inj., ECF No. 26 ("TRO Reply") at 1-2.)  In fact, Uchikura seeks a determination by the court that the claims asserted by him against Defendants are not subject to arbitration, at least until the court has the opportunity to consider whether YFM, Yoshida, and Yoshida Holdings are also subject to arbitration or would be bound by the arbitration award.

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing the filing of the Arbitration provides the relief sought in the Complaint and makes the Complaint moot.  Alternatively, Defendants seek dismissal

under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim based on the filing of the Arbitration.

*Legal Standards*

I.  Federal Arbitration Act

The Federal Arbitration Act (9 U.S.C. § 1- 16)(the "FAA")[4] provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2014). The Supreme Court has stated "arbitration is a matter of contract" and district "courts [should] place arbitration agreements on equal footing with other contracts." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002). Accordingly, arbitration agreements are subject to all defenses to enforcement that apply to contracts in general. Indeed, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

When evaluating the validity of an arbitration agreement, district courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1985). If the arbitration agreement is valid and encompasses the dispute, the court must respect and enforce the arbitration agreement in accordance with its terms. *Chiron Corp. v. Ortho Diagnostic Sys.,* 207 F.3d 1126, 1130 (9th Cir.2000). An otherwise valid

---

[4]The Agreement is "a contract evidencing a transaction involving commerce" and is, therefore, subject to the FAA. 9 U.S.C. § 2. *See also Chiron Corp. v. Ortho Diagnostic Sys.,* 207 F.3d 1126, 1130 (9th Cir. 2000)(despite choice of law provision, federal law governs authority of arbitrator under arbitration clause).

arbitration clause may be found unconscionable and, thus, unenforceable.  This is a question of law to be determined by the court and is "based on the facts in existence at the time the contract was made."  *Livingston v. Metropolitan Pediatrics, LLC,* 234 Or. App. 137, 151 (2010).

The FAA expresses the strong federal policy in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Any doubts with regard to the arbitrability of a party's claims should be resolved in favor of arbitration.  *Mitsubishi Motors Corp.v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).   This presumption in favor of arbitrability is also recognized by the Oregon courts.  *Livingston,* 234 Or. App. at 147.

## II.  Rule 12(b)(1)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter jurisdiction of the court."  *Ahmed v. Scharfen*, No. C 08-1680 MHP, 2009 WL 55939, at *3 (N.D. Cal. Jan. 7, 2009) (citing *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039-40 (9th Cir. 2003)).  This challenge to jurisdiction may be either facial or factual, depending on whether the motion relies only on the allegations in the complaint or on evidence extrinsic to the complaint as well.  *See Savage*, 343 F.3d at 1039 ("In evaluating the rule 12(b)(1) motion to dismiss, the district court considered affidavits furnished by both parties.  This is proper because Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." (citation omitted)).  Where the challenge is factual, the court "need not" presume true the allegations contained in the complaint.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  The party asserting jurisdiction bears the burden of establishing that it exists in a given case.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citing *McNutt v. General Motors Acceptance Corp. of Indiana*,

298 U.S. 178, 182-183 (1936)).

III.  Rule 12(b)(6)

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2)(2011).  A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*.  While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556  U.S. 662, 678 (2009).  Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678); *Sheppard v. David Evans and Assoc.*, No. 11-35164, 2012 WL 3983909 at *4 (9th Cir. Sept. 12, 2012) ("The Supreme Court has emphasized that analyzing the sufficiency of a complaint's allegations is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"(quoting *Iqbal*, 556 U.S. at 679)).

*Discussion*

I.  Validity of Arbitration Clause

Uchikura asserts six claims for relief in the Complaint.  The first three seek an injunction

ordering Yoshida Business, YFM, Yoshida Holdings, and Yoshida to participate in an arbitration pursuant to the Arbitration Clause; the fourth seeks rescission of the Agreement based on the absence of a meeting of minds, the fifth seeks reformation of the Agreement to reflect the original intent of the parties; and the sixth asserts unjust enrichment based on failure to act in accordance with the oral agreement of the parties.   The latter three claims were are identified as alternative claims and remedies, sought only if 'there is no enforceable agreement to arbitrate." (Compl. ¶ 10.)

Despite identifying enforcement of the Arbitration Clause as his primary objective in filing the Complaint and alleging the Arbitration Clause is "an enforceable agreement to arbitrate disputes, even if the Agreement fails to describe a binding or enforceable license," Uchikura appears to argue in his reply brief the dissolution of Yoshida Business eighteen months after executing the Agreement is a repudiation of the Agreement justifying rescission of the Agreement and invalidation of the Arbitration Clause.   In other words, because the dissolution of Yoshida Business made the Agreement  invalid and unenforceable, the Arbitration Clause is also invalid and unenforceable.

While courts are tasked with the job of addressing claims that an arbitration agreement is unenforceable, where a party raises the question of the validity of the contract as a whole and the arbitration language is broad enough to encompass claims asserting improprieties in the making of the contract, the FAA requires the validity of the contract to be decided by the arbitrator, not the court. *Prima Paint Corp. v. Flood & Conklin, Mfg. Co.*, 388 U.S. 395, 403-07 (1967).   Or, as the Supreme Court succinctly explained, "it is a mainstay of the Act's substantive law that attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved 'by the arbitrator in the first instance, not by a federal or state court.'" *Nitro-Lift Technologies, L.L.C.  v. Howard*, __ U.S. __, 133 S.Ct. 500, 503 (2012)(quoting *Preston v. Ferrer*,

552 U.S. 346, 349 (2008)).  The Ninth Circuit has limited the application of this rule to "'voidable' contracts – those 'where one party was an infant, or where the contact was induced by fraud, mistake, or duress, or where breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140 (9th Cir. 1991).

Uchikura's claims contest the validity of the Agreement as whole, not the Arbitration Clause alone.  In the Complaint, Uchikura alleged the Agreement must be rescinded or reformed based on its failure to document the agreement between the parties, and he now asserts the Agreement must be rescinded based on the dissolution of Yoshida Business and resulting repudiation of the Agreement.  These attacks on the enforceability of the Agreement must be resolved in the Arbitration.

Here, the Arbitration Clause is broadly worded, encompassing "[a]ll controversies or claims between Licensor and the Licensee relating to this license."  (Compl. Ex. A, at ¶ 13.)  Where resolution of a dispute requires analysis of the terms of an agreement as well as evidence relating to the validity or breach of such agreement, the dispute necessarily arises out of a controversy or claim related to the agreement.  *Chiron*, 207 F.3d at 1131.  Uchikura's assertion the Agreement should be rescinded, reformed, or terminated, as well as his claim the Agreement has been breached, will require consideration of the parties' actions, both before and after execution of the Agreement, as well as the express terms of the Agreement.  Accordingly, the Arbitration Clause clearly encompasses both the attacks on the validity of the Agreement as well as Uchikura's claims for breach of the Agreement, and all these questions must be resolved in the Arbitration, not by the court.

This reasoning also applies to Uchikura's recent argument that the court, not the arbitrator, must consider the effect of the dissolution of Yoshida Business in light of the no-assignment clause in the Agreement. Uchikura alleges the Agreement was personal to Yoshida Business and that Yoshida Business attempted to assign the rights to a successor entity when it ceased to exist. The question of whether the dissolution of Yoshida Business resulted in an assignment of the Agreement to another entity, such as YFM, Yoshida Holdings, or Yoshida, and thereby violated the no-assignment clause of the Agreement, is properly characterized as a claim or controversy between Uchikura and Yoshida Business relating to the license. Accordingly, this dispute falls within the broad language of the Arbitration Clause as well and must be determined in the Arbitration.

## II. Parties Subject to Arbitration

In the Complaint, Uchikura asks the court to order YFM, Yoshida Holdings, and Yoshida to participate in the Arbitration as a necessary party. Uchikura alleges YFM, as sole member of Yoshida Business, is a party to the Agreement; Yoshida Holdings is a necessary party as successor-in-interest to YFM; and Yoshida, who treated Yoshida Business as an alter ego, is personally liable for the acts and omissions of Yoshida Business. However, Uchikura now argues YFM, Yoshida Holdings, and Yoshida did not agree to arbitrate and are not bound by the Arbitration Clause, and that Uchikura agreed to arbitrate with only Yoshida.

### A. Yoshida Business

Yoshida Business filed articles of dissolution with an effective date of December 31, 2011. As a dissolved limited liability company, Yoshida Business continued its existence for the sole purpose of winding up and liquidating its business affairs and assets. OR. REV. STAT. 63.637 (2013). During the winding up of a limited liability company, the assets are distributed first to

creditors in satisfaction of liabilities of such company, with the remainder to the members. OR. REV. STAT. 63.625 (2013). Dissolution of a limited liability company does not transfer title to the company's property or prevent commencement of a proceeding by or against the company. OR. REV. STAT. 63.637. A claim against a dissolved limited liability company not otherwise barred may be enforced against the dissolved limited liability company to the extent of its undistributed assets or, if the assets have been distributed, against the members of the dissolved limited liability company receiving the assets up to the value of the distributed assets on the date of such distribution. OR. REV. STAT. 63.645 (2013).

To the extent the Agreement remains an asset of Yoshida Business, Yoshida is a proper defendant in this action. Uchikura alleges Yoshida reimbursed him for fees and costs under the Agreement on a Yoshida Business account through January 2013, which supports a conclusion that Yoshida Business did not transfer the Agreement to YFM at the time of its dissolution. Accordingly, Uchikura is entitled to commence this action against Yoshida Business and enforce any judgment it might receive against Yoshida Business against its undistributed assets.

### B. Remaining Defendants

Uchikura contends the court must determine the obligations of the remaining Defendants under the Agreement before Arbitration and that failure to do so will result in duplicative litigation. The court disagrees. Based on the express provisions of the Agreement, the controversies and claims between Uchikura and Yoshida Business must be resolved by arbitration. It is possible the arbitrator will find the Agreement has not been breached or that Uchikura, not Yoshida Business, breached the Agreement. In that instance, Uchikura will not have a judgment to enforce and a determination of the relative responsibilities of YFM, Yoshida Holdings, and Yoshida will not be necessary. In this

instance, allowing the Arbitration to proceed first will eliminate the need for duplicative litigation.

Also, until the issues relating to the Agreement are resolved in the Arbitration in a manner requiring court involvement to address unresolved issues of Defendants' respective liability, any ruling by the court on this issue would be advisory only. "Federal courts are limited to deciding the outcome of an actual 'case or controversy.'" *Vieux v. E. Bay Reg'l Park Dist.*, 906 F.2d 1330, 1344 (1990) (citing U.S. Const. Art. III; *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239 (1937)). A determination whether an actual case or controversy exists falls under the doctrine of ripeness. "The ripeness doctrine prevents courts from deciding abstract issues that have not yet had a concrete impact on the parties." *Id.* (citing *Assiniboine and Sioux Trives v. Bd. of Oil and Gas Conservation*, 792 F.2d 782, 787 (9th Cir. 1986). In this circuit, courts focus on two factors: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Acura of Bellevue v. Reich*, 90 F.3d 1403, 1408 (9th Cir. 1996) (citing *Dietary Supplemental Coalition, Inc. v. Sullivan*, 978 F.2d 560 (9th Cir. 1992)).

As noted above, the issue of Defendants' respective responsibilities for a liability that has yet to be determined is not ripe, or not fit for judicial determination. The existence of any responsibility is contingent on a finding Yoshida Business is obligated to Uchikura in some manner relating to the license, which must be made in the Arbitration. Only after arbitrator has determined the existence of an obligation, the type of obligation, and the resulting damages will the question of which Defendants are responsible for such obligations and damages be properly before the court. Deferring ruling on the possible responsibilities of Defendants until after an arbitration award is entered will not result in hardship to either party. Accordingly, the court will not issue an advisory opinion on the existence and responsibility of the various Defendants but will address those issues only if

necessary in light of the results of the Arbitration.

Furthermore, it is possible Defendants' respective liability may properly be resolved in Arbitration.  "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Warrior & Gulf Navigation Co.*, 363 U.S. at 582.  "A party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). However, consent to arbitration "may be implied by the conduct of the parties in the arbitration setting." *George Day Const. v. United Bhd. of Carpenters & Joiners, Local 354*, 722 F.2d 1471, 1475 (9th Cir. 1984).  For example, an alleged "alter ego" of a party who voluntarily submits to the jurisdiction of an arbitrator by initiating an arbitration may be viewed as consenting to arbitration based on the alter ego's participation in the arbitration proceedings. *See Nordell Int'l Res. Ltd. v. Triton Indonesia, Inc.*, 999 F.2d 544, *9 (9th Cir. 1993) (unpublished opinion).

Yoshida Business initiated the Arbitration with the Arbitration Service.  Rule 30[5] of the Procedural Rules of the Arbitration Service gives the arbitrator broad equitable powers.  The arbitrator may consider the relationship between YFM, Yoshida Holdings, and Yoshida, as well the participation of these defendants in the Arbitration, in determining whether these defendants have impliedly consented to the Arbitration.  Also relevant in this consideration is Defendants' representation in this action that once this court determines arbitration is appropriate, "then all issues

---

[5]Rule 30 provides:

> The arbitrator(s) may grant any relief or remedy deemed by the arbitrator(s) to be just and equitable and which is within the scope of the agreement of the parties, including, but not limited to, equitable relief and the specific performance of a contract, punitive damages (if such are claimed and would be recoverable in Oregon court), and costs and attorney fees as authorized in these rules.

'inextricably tied up with the merits of the underlying dispute,' including issues of alter ego (and therefore proper party identity) are properly within the scope of arbitration." This representation may be considered evidence of consent to an arbitrator in determining YRM, Yoshida Holdings, and Yoshida's respective liabilities.

Additionally, Yoshida, as Chief Executive Officer of YFM, executed the Agreement on behalf of YFM, sole member of Yoshida Business. While the arbitrator may not enter an award against YFM and Yoshida Business on this basis alone if they are not named as parties in the Arbitration, it might support the arbitrator's finding of consent if YFM and Yoshida Business are subsequently named as parties in the Arbitration. *Nordell*, 922 F.2d at *9 (arbitrators lack authority to add new party without consent of such party and, by implication, may not enter awards against non-parties)(citing *Pac. Reinsurance v. Ohio Reinsurance*, 935 F.2d 1019, 1026-27 (9th Cir. 1991)). Accordingly, if YFM and Yoshida are added as parties to the Arbitration, the arbitrator is empowered to determine whether Yoshida and YFM are properly considered parties to the Agreement and, thus, subject to the Arbitration Clause.

III.  Motions to Dismiss

Defendants move to dismiss the Complaint, arguing initiation of the Arbitration moots all claims asserted in the Complaint. While it is likely the Arbitration will resolve all of the issues raised by Uchikura in the Complaint, it is possible the court will need to address the respective liability of the Defendants once the arbitration award is issued. Accordingly, the courts finds this action should be stayed, not dismissed.

*Conclusion*

Uchikura's motion (ECF No. 11) for temporary restraining order or preliminary injunction

staying the Arbitration is DENIED.  Defendants' motion (ECF No. 20) to dismiss this action is also

DENIED.  The court STAYS this lawsuit pending resolution of the claims in the  Arbitration in light

of the possibility the court will need to address issues unresolved by the Arbitration.

DATED this 25th day of January, 2016.


_____/s/ John V. Acosta_____
JOHN V. ACOSTA
United States Magistrate Judge